(89 P.3d 940)

No. 89,308

STATE OF KANSAS *Appellee*, v. CHARLES D. GREEN, *Appellant*.

Opinion filed May 14, 2004.

*Matthew J. Edge*, assistant appellate defender, for the appellant.

*Charles D. Green*, appellant pro se.

*Kristi L. Barton*, assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for the appellee.

Before PIERRON, P.J., LEWIS and MCANANY, JJ.

PIERRON, J.: Charles D. Green appeals his conviction for possession of cocaine after a prior conviction, a severity level 2 drug felony, in violation of K.S.A. 65-4160(b). Green argues the trial court erred in failing to suppress evidence obtained after the police allegedly illegally arrested him and pumped his stomach. He also argues there was insufficient evidence to convict him of possession of cocaine. We affirm.

On August 17, 2001, Green drove to the Surf Motel in Wichita to pick up Chantel Cruz, a friend of his fiancee, Angela Taylor. Cruz had called Angela to ask if she could come stay with her. Cruz testified the motel room she called from was not hers, but was the

room of "one of the girls on the street," who let Cruz use the phone to call Taylor. Cruz was going to live with Green and Taylor until she was able to get her life straightened out.

Green testified that when he arrived at the motel, Cruz was not ready to go. He became upset because Cruz had plenty of time before he got there, the motel was not in a good neighborhood, and there were drugs in the motel room. Cruz testified there was marijuana and drug paraphernalia in the room. Green said he left the motel room and was at his car when he met the police officers.

Wichita Police Officers Michael Dean and Chris Welsh were at the Surf Motel at 11:20 p.m. on the evening in question to assist undercover narcotics agents in identifying some individuals in the motel. At the motel, they heard someone yelling profanities and they discovered Green shouting into a motel room. The officers saw the object of Green's yelling was Cruz, who was crying and hysterical. The officers were wearing black T-Shirts with "Police" printed in large white letters on the front.

Concerned about a possible domestic violence situation, the officers approached Green in order to speak with him and attend to the situation. Green responded, "Fuck you; I don't need to talk to the police," and ran into the motel room and slammed the door. The officers ran to the door and broke it down. Both officers testified they were concerned about the escalation of an apparent domestic violence situation. Officer Dean testified that when they entered the room Green was heading into the bathroom looking over his shoulder. He went into the shower and was doing something with his hands around his waist area. Officer Dean grabbed Green from behind and both officers were eventually able to force Green to the ground. As they struggled, Officer Dean saw Green put his hands to his face. Green refused all commands to stop resisting, and because of his size and strength, it took a number of officers to subdue him.

During a search of Green, officers found a large amount of cash and a white pill bottle in his pockets. There was a white, powdery residue inside the pill bottle which tested positive for cocaine. During a search of the motel room, Dean found an empty baggie with the corner torn off in the shower where the struggled began. The

baggie had a white, powdery residue. Dean hypothesized that when he saw Green put his hands to his face, he was probably ingesting whatever drugs were in the baggie.

After his arrest, Green began sweating profusely and became unresponsive. The police called in paramedics and told them Green may have ingested cocaine. He was then taken to the hospital. At the hospital, Green was combative, spitting on and trying to bite people, and had to be restrained by medical personnel and police officers. Dr. Martin Selberg, the emergency room physician on duty when Green arrived, testified Green was completely non-communicative and was fluctuating between absolutely quite and still and random, violent movements. He found Green's history of possible cocaine intoxication and cocaine ingestion was consistent with his current condition. Dr. Selberg stated it was necessary to pump Green's stomach in order to deal with a potentially lethal ingestion of cocaine.

Dr. Selberg examined the contents of Green's stomach and noticed what he believed were cocaine rocks or crack rocks. Officer Long Nguyen filtered the stomach contents and found small white specks or very small items. Dean field-tested the items and they tested positive for cocaine.

Green was charged with possession of cocaine after a prior conviction and attempted aggravated battery of a law enforcement officer. Green filed a motion to suppress based on an illegal arrest and requested suppression of any evidence obtained after the arrest and the alleged illegal pumping of his stomach. The trial court denied the motion to suppress, finding the police officers had a duty to investigate the possibility of domestic violence and then had probable cause to pursue and arrest Green based on their observations in the room. The trial court also held it was more probably true than not true that the decision to pump Green's stomach was made by hospital personnel.

The jury acquitted Green on the charge of attempted aggravated battery on a law enforcement officer but convicted him of possession of cocaine after a prior conviction. The trial court sentenced Green within the presumptive sentencing range to a term of 64 months' incarceration.

Green first argues the trial court erred in failing to grant his suppression motion.

When reviewing a motion to suppress evidence, the appellate court determines whether the factual underpinnings of the trial court's decision are supported by substantial competent evidence. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. The appellate court does not reweigh the evidence. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001).

Green argues the police lacked probable cause to arrest him because they did not witness him commit any crime. He states that his screaming and demeanor would have been insufficient to obtain a warrant and no evidence existed that he would harm Cruz. Green argues any evidence obtained after the arrest was the fruit of an illegal arrest and should be suppressed.

In his pro se brief, Green argues the entry into the motel room was illegally based on Green's use of vile and profane language. Green also challenges the warrantless pumping of his stomach and the intrusion into his body. He contends the officers had plenty of time to request a search warrant while they were at the scene that could have easily been acted upon by the time they arrived at the hospital. He maintains it is highly unlikely a magistrate would have issued a warrant since the officers did not witness Green ingest anything, nor did they see the baggie in his possession. Green also argues the police should have obtained a warrant before conducting more extensive searches and tests on the contents of his stomach. He claims the results of the tests performed on his stomach contents carry a taint of illegality because Officer Nguyen searched through the contents while alone in a utility closet.

"If a warrantless arrest is challenged by a defendant, the burden is on the State to justify the arrest was not only authorized by the statute, but that it was permissible under the Fourth Amendment to the United States Constitution. The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause to believe that the person arrested had committed a felony."

"Probable cause for arrest without a warrant depends upon the probabilities arising from known facts and circumstances. Probable cause exists when the prac-

tical considerations of everyday life would lead a reasonable and prudent officer to believe a felony has been or is being committed."

"In determining whether probable cause to arrest exists, all the information in the officer's possession, fair inferences therefrom, and facts may be taken into consideration that might not be admissible on the issue of guilt." *State v. Aikins*, 261 Kan. 346, Syl. ¶ ¶ 2, 3, 6, 932 P.2d 408 (1997).

The trial court correctly relied upon K.S.A. 22-2402 for authority, which allows the police to stop a person in a public place for an explanation of the person's actions when the police reasonably suspect the person is committing, has committed, or is about to commit a crime. See *State v. Slater*, 267 Kan. 694, 696-97, 986 P.2d 1038 (1999). The court also addressed the domestic violence situation by relying upon K.S.A. 2003 Supp. 22-2307 for authority that Officers Welsh and Dean had an affirmative duty to make an arrest in a domestic violence situation if they had probable cause to believe that a crime was being committed or had been committed. See *State v. Whittington*, 260 Kan. 873, 880, 926 P.2d 237 (1996).

When confronted with violent situations, police must often act quickly without complete information as to the facts. In determining if their actions violate the Fourth Amendment to the United States Constitution, we look to all the circumstances surrounding the situation. We will suppress evidence seized as a result of police actions when those actions were unreasonable under the facts.

We believe the police made a legal entry into the motel room. Cruz never objected to the officer's intrusion into the room. Neither did anyone else besides Green, who had no dominion over the room. Green had no legal ability to challenge the entry under these facts. "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171-72, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969); accord *State v. Sanders*, 5 Kan. App. 2d 189, 192, 614 P.2d 998 (1980). The basic test to determine whether a person has standing to challenge the validity of the search is not whether the person had a possessory interest

in the items seized, but whether he or she had a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 65 L. Ed. 2d 633, 100 S. Ct. 2556 (1980).

Under the circumstances of this case, it is clear that Officers Dean and Welsh had probable cause to believe that a domestic violence situation, or simply a violent situation, was occurring and escalation of the matter was quite possible. They heard the yelling and saw the possible victim, who was hysterical. They could also rely on Green's statement, "Fuck you; I don't need to talk to the police," and his hurried action back into the motel room and slamming of the door as raising further suspicion. It was reasonable for the officers to believe that further violence might occur if they left the scene without making sure that everyone in the motel room was safe. It was necessary to enter the motel room to make sure that no further assistance was needed and that the potential for violence had ended. No one who had any lawful control over the room objected to the actions of the police.

When in the motel room, the issue quickly turned to one of officer safety. Officer Dean testified that when they entered the motel room, they saw Green go into the bathroom shower and start digging in his pants. Dean stated he was concerned that Green had a weapon and was trying to retrieve it. Dean grabbed Green from behind and from this point on, Green resisted every order to surrender and all police action to subdue him. After he was restrained, the police found a large amount of cash in his pocket and a pill bottle containing cocaine residue. The police had sufficient evidence to arrest Green based on the search of his person.

We also agree with the trial court's decision not to suppress the evidence obtained as a result of pumping Green's stomach.

The first case to review in matters such as this is *Rochin v. California*, 342 U.S. 165, 166, 96 L. Ed. 183, 72 S. Ct. 205 (1952), where the police directed a doctor to administer an emetic solution to the defendant to induce vomiting after he swallowed two capsules that had been on a night stand in his bedroom. The officers had information that the defendant was selling narcotics and had forced their way into his bedroom without a warrant. The United

States Supreme Court held that the officers' conduct violated the Due Process Clause of the Fourteenth Amendment, writing:

"[T]he proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." 342 U.S. at 172.

The case at bar is not comparable to *Rochin*. The original actions by the police in this case were lawful, as set out above. The original actions by the police in *Rochin* were apparently unlawful. The emergency room physician in our case made a medically sound decision to pump Green's stomach based on patient history and Green's condition at the time. Dr. Selberg's decision prevented a potentially lethal ingestion of cocaine and may well have saved Green's life. Pumping Green's stomach in this situation does not offend normal sensibilities. See also *People v. Jones*, 20 Cal. App. 3d 201, 210, 97 Cal. Rptr. 492 (1971) (the court approved a stomach lavage performed by a doctor at the request of the police because there was clear evidence justifying a reasonable belief that defendant had swallowed a lethal dosage of barbiturates and was in danger of death).

Green also argues there was insufficient evidence to convict him of possession of cocaine. He contends neither the results of the tests taken from the pill bottle or his stomach amounted to possession of cocaine sufficient for capacity for use. He states the pill bottle contained only traces of cocaine and the cocaine found in his stomach had already been consumed and could no longer be considered possession.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

Green concedes that possession of any amount of a controlled substance is sufficient for conviction on a possession charge, even if that amount is so minute as to be unusable or immeasurable. The amount found in the bottle would suffice. See *State v. Brown*, 245 Kan. 604, 613-14, 783 P.2d 1278 (1989); *State v. Lundquist*, 30 Kan. App. 2d 1148, 1151, 55 P.3d 928 (2002). Green also argues that the cocaine pumped from his stomach cannot be used to establish possession because it was already consumed in his body.

The major Kansas case in this area of criminal law is *State v. Flinchpaugh*, 232 Kan. 831, 834, 659 P.2d 208 (1983). In *Flinchpaugh*, the defendant was involved in an automobile collision and charged with possession of cocaine based solely on the results of blood tests taken following the collision. The State presented no evidence of how or when the chemicals were introduced into the defendant's system, and the trial court dismissed the charges. The Kansas Supreme Court affirmed, finding that because a person no longer has the requisite power to control a drug once it is within his or her system, evidence of a controlled substance after it is assimilated in a person's blood does not establish possession or control of that substance. 232 Kan. at 834. At the same time, the court recognized:

"Discovery of a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug, but it is not sufficient evidence to establish guilt beyond a reasonable doubt. The absence of proof to evince knowledgeable possession is the key. The drug might have been injected involuntarily, or introduced by artifice, into the defendant's system. The prosecution did not establish that defendant ever knowingly had control of the cocaine. . . . In the narrow holding of this case, we find that evidence of a controlled substance assimilated in one's blood does not establish possession of that substance as defined by K.S.A. 65-4127a, nor is it adequate circumstantial evidence to show prior possession by that person. Other corroborating evidence combined with positive results of a blood test could be sufficient evidence to prove guilt beyond a reasonable doubt depending on the probative value of the corroborating evidence." 232 Kan. at 835-36.

The court in *State v. Myers*, 258 Kan. 51, 56, 899 P.2d 1036 (1995), explained the limited reach of *Flinchpaugh*: "The narrow holding of *Flinchpaugh* applies to cases in which the *only* evidence is evidence of a controlled substance *after* it is assimilated in the

blood. In such cases, the necessary elements of knowing and intentional control over the substance are lacking."

Green's reliance on *Flinchpaugh* is misplaced. First and foremost, we are not dealing with evidence of a controlled substance after it has been assimilated in the blood. Drugs sitting in the defendant's stomach have not been assimilated into the body. Rather we are dealing with ingestion of drugs through the mouth and into the stomach in hopes of avoiding detection by law enforcement officers. See *State v. Thronsen*, 809 P.2d 941 (Alaska App. 1991) (cited in *Myers*, 258 Kan. at 58—defendant injected drugs with a syringe, defendant charged with possession of cocaine "in his body," court concluded that a defendant could not be convicted of possession of cocaine in his or her body because the person has no control over the cocaine at that point and therefore does not have possession).

Officer Dean testified that when he entered the motel room, Green was digging in his pants, and then later as they struggled, Green put his hands to his face. After the arrest, officers discovered the baggie with the torn corner containing white residue. The theory of Green's ingestion of cocaine became very likely with Green's physical symptoms after the arrest. This theory was confirmed by medical professionals in the emergency room at the hospital. Although the results of a search cannot justify the search, the resulting cocaine rocks/specks pumped out of Green's stomach confirmed the reasonable suspicions of the police officers and medical professionals that Green had swallowed cocaine.

We find there was sufficient evidence to support Green's conviction for possession of cocaine.

Affirmed.