(124 P.3d 1054)

No. 93,386

STATE OF KANSAS, *Appellee*, v. GEORGE MOORE, *Appellant*.

Opinion filed December 23, 2005.

*Nathan B. Webb*, assistant appellate defender, and *Brian W. Woolley*, legal intern, for appellant.

*Tony Cruz*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE, J., AND BRAZIL, S.J.

RULON, C.J.: Defendant George Moore appeals his convictions for possession of marijuana with the intent to deliver and for failure to affix drug tax stamps, arguing the district court erred in refusing to suppress evidence illegally obtained and to grant a defense continuance in light of new evidence. We affirm.

On October 16, 2002, Kansas Highway Patrol Trooper Richard Jimerson and Junction City Police Officer James Oehm were parked in the median between eastbound and westbound lanes of I-70 near Junction City. Trooper Jimerson observed the defendant's vehicle, which he believed to be following another vehicle too closely. Jimerson pulled onto the highway and approached the vehicles, timing the distance between the two vehicles at less than 1 second. The trooper then executed a traffic stop.

For safety reasons, Trooper Jimerson approached the stopped vehicle on the passenger side. He informed the driver, who was eventually identified as the defendant, of the reason for the stop. According to Trooper Jimerson, the defendant acknowledged he had been following too closely and apologized. The defendant denied making an apology.

The trooper asked the defendant for his driver's license and vehicle registration, which the defendant was able to produce. The vehicle the defendant was driving was registered to James Ward. Trooper Jimerson noted the defendant exhibited a higher degree of nervousness than typically displayed in a routine traffic stop and testified he noted a faint odor of fabric softener, which Trooper Jimerson knew to be commonly used to conceal the odor of drugs.

During this exchange, Officer Oehm arrived as back-up. When Trooper Jimerson returned to his vehicle to run a driver's license check, dispatch originally reported the defendant's license had been suspended. The trooper requested Officer Oehm to question the defendant about this reported suspension. Officer Oehm approached the passenger side window and asked the defendant about having his license suspended. The defendant reacted with confusion and surprise. Officer Oehm then questioned the defendant about his travel plans, and the defendant revealed that he was traveling from Las Vegas and a friend had loaned him the car.

In the meantime, Trooper Jimerson was writing a citation for driving with a suspended license and a warning for following too closely. However, as Trooper Jimerson was doing so, the dispatcher called back to rescind the prior report that the defendant's license had been suspended. Consequently, Trooper Jimerson returned to the defendant's vehicle with the warning citation, the defendant's driver's license, and the vehicle registration. As Trooper Jimerson handed the documents to the defendant, he advised the defendant that he had nothing further for him.

Before stepping away from the vehicle, Trooper Jimerson asked the defendant to answer a few more questions. According to Trooper Jimerson, the defendant had placed his hand on the gearshift before Trooper Jimerson engaged the defendant in further questioning, but the defendant claimed he made no move to leave because Trooper Jimerson remained leaning against the frame of the passenger side window. In any event, the defendant agreed to answer further questions. Trooper Jimerson then inquired whether the defendant had illegal contraband, such as weapons or drugs. The defendant replied that he did not.

Trooper Jimerson testified he next requested permission to search the vehicle and that the defendant replied the trooper could look wherever he wanted. In contrast, the defendant testified Trooper Jimerson merely inquired about the contents of his duffle bag, which the defendant said contained laundry. The defendant contended his consent to search was limited to this bag. Both the defendant and Trooper Jimerson agreed that the trooper asked the defendant to open the trunk and the defendant complied.

After looking in the trunk, Trooper Jimerson conducted a thorough search of the interior of the vehicle, beginning with the passenger side of the vehicle, moving to the driver side, then returning to the passenger side. The evidence is disputed whether Trooper Jimerson removed the ashtray in order to look inside the cavity provided for the ashtray or if the ashtray had been removed prior to the search, but when Trooper Jimerson looked inside the space for the ashtray, he noticed a hinge on the interior passenger door quarter panel and a felt covering which was not factory installed. Further investigation within the quarter panel revealed a package wrapped with fabric softener sheets. The package contained a leafy substance, which the trooper believed to be marijuana.

The defendant was arrested, and a later search of the vehicle revealed a total of 55 pounds of marijuana concealed throughout the vehicle. The State charged the defendant with possession of marijuana with the intent to distribute, in violation of K.S.A. 65-4163(a)(3), and failure to affix Kansas drug tax stamps, in violation of K.S.A. 79-5204(a).

The defendant filed a motion to suppress, and, on joint motion, the district court held a hearing covering the motion to suppress and the bench trial. On the day of the hearing, defense counsel moved for a continuance to investigate a claim by the defendant that the person who had loaned the defendant the vehicle had been indicted on federal drug charges in Maryland. The district court denied the motion. After hearing the evidence, the district court found the search of the vehicle and the seizure of the marijuana was not accomplished in violation of the defendant's Fourth Amendment rights and convicted the defendant of both charged offenses.

The defendant moved for a judgment of acquittal or a new trial based upon the district court's refusal to grant a continuance to investigate the newly discovered evidence before trial. The district court denied the motion and sentenced the defendant to 15 months for the possession with intent to distribute conviction and 6 months for the drug tax stamp conviction. Both sentences were ordered concurrent. The defendant's sentences were suspended,

and the defendant was placed on probation for a term of 18 months.

## Fourth Amendment Issue

The defendant contends the seized marijuana introduced in evidence against him was illegally obtained and, therefore, the district court should have suppressed the evidence. Appellate review of a suppression ruling is a mixed question of fact and law. This court reviews a district court's factual findings for substantial competent evidence, but the ultimate determination concerning the suppression of evidence is a question of law over which this court has unlimited review. See *State v. Green*, 32 Kan. App. 2d 789, 792, 89 P.3d 940, *rev. denied* 278 Kan. 849 (2004).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit the government from conducting unreasonable searches and seizures. The reasonableness of a search or seizure is defined by balancing the governmental interest against the individual's interest to be secure from government intrusion. See *Terry v. Ohio*, 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

K.S.A. 22-2402 is a codification of *Terry*. See *State v. Field*, 252 Kan. 657, 659, 847 P.2d 1280 (1993). K.S.A. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions."

Here, the initial stop was premised upon Trooper Jimerson's observation of the defendant's vehicle following too closely behind another vehicle on the highway in violation of K.S.A. 8-1523. The pertinent provision of that statute reads: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." K.S.A. 8-1523(a). After clocking the vehicles speeds, the trooper opined the defendant was following too closely by determining the defendant's vehicle was less than 2 seconds behind the other vehicle and by estimating the number of car lengths between the

vehicles in relation to the speeds at which the vehicles were traveling.

While our research has revealed no Kansas appellate court decisions concerning the standard of reasonable and prudent driving within the meaning of this statute, the Tenth Circuit Court of Appeals has previously determined that either of these standards may properly direct an officer in the determination of a reasonable and prudent following distance. See *United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004), *vacated on other grounds* 543 U.S. 1113 (2005), *conviction reinstated* 410 F.3d 1186 (2005) (2-second rule); *United States v. Vercher*, 358 F.3d 1257, 1261-62 (10th Cir. 2004) (car-length standard).

The *Vercher* court noted the Kansas statute takes into consideration four variables: speed, following distance, road conditions, and traffic conditions. However, even though the officer did not testify about the traffic conditions, the *Vercher* court upheld the officer's objective determination the defendant had been following too closely when the distance between the vehicles was approximately 2 car lengths and the recommended distance under normal conditions was 8 to 10 car lengths. 358 F.3d at 1259, 1261-62.

The *Nichols* court concluded that an officer had a reasonable basis to stop the defendant for believing the driver might be a traffic hazard. 374 F.3d at 965. The officer testified he had timed the defendant's vehicle three times and each time had demonstrated the defendant's vehicle was less than the recommended traveling rate of 2 seconds behind a preceding vehicle. The court reasoned: "We believe Weigel's use of a two-second rule of thumb together with his calculation of the interval three separate times provided the 'minimal level of objective justification' required for reasonable suspicion justifying a traffic stop. [Citation omitted.]" 374 F.3d at 965.

In the present case, Trooper Jimerson testified he initially observed the defendant traveling less than the recommended distance of six to seven car lengths behind the preceding vehicle based upon a standard of one car length for every 10 miles per hour in speed. After Trooper Jimerson had caught up to the defendant's vehicle, the trooper timed the defendant's following rate at .72

seconds. The independent corroboration using two separate tests provided a sufficient basis for a traffic stop of the defendant's vehicle.

Although the defendant's version of the events surrounding the stop conflict with the officer's testimony, this court does not weigh evidence or judge the credibility of the witnesses. See *Green*, 32 Kan. App. 2d at 792. As Trooper Jimerson's testimony provides a basis from which to opine the defendant committed a violation of K.S.A. 8-1523(a), which the district court adopted, the initial stop of the defendant was valid. Even if the officer's subjective motive for stopping the defendant was improper, the traffic violation provided an objectively valid reason to effectuate a traffic stop. See *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998).

The defendant next contends that, even if the initial stop had been justified, the detention exceeded the purpose of the stop. "The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper." *DeMarco*, 263 Kan. at 733 (citing *Terry*). When a stop is effectuated due to some minor traffic infraction, a detention for the purpose of checking the driver's license and registration is permissible, but "once the check confirms a proper license and entitlement to operate the car, the driver must be allowed to proceed without further delay or questioning." *DeMarco*, 263 Kan. at 734.

Nevertheless, *DeMarco* acknowledged two bases for properly detaining a driver further after a driving record check is completed: (1) the encounter ceases to be a detention and becomes consensual or (2) the officer possesses a reasonable and articulable suspicion that the driver is involved in a criminal enterprise which warrants further investigation. 263 Kan. at 734 (citing *United States v. Mendez*, 118 F.3d 1426, 1429-30 [10th Cir. 1997]).

Although a slight detention caused by a consensual encounter with a law enforcement officer cannot be deemed a seizure of a person within the meaning of the Fourth Amendment, an encounter is not consensual where a reasonable person in the defendant's position would not feel free to leave. See *State v. Reason*, 263 Kan. 405, 410, 951 P.2d 538 (1997). The central inquiry into the State's claim that the further detention was justified by a consensual en-

counter is whether the driver possessed an objective reason to believe he was not free to terminate his conversation with the officer and proceed on his way. See *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994) (citing *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 111 S. Ct. 2382 [1991]).

A court must consider the totality of the circumstances in determining whether a reasonable person would feel free to terminate the encounter and depart. Some objective factors which may indicate a coercive show of authority include the presence of more than one officer, the display of a weapon, physical contact by the officer, or use of a commanding tone of voice. See *United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997). Whether the officer informed the person subject to a traffic stop of the freedom to depart is also a factor, although there is no rule requiring a law enforcement officer to inform an individual of his or her right to terminate the encounter. *Reason*, 263 Kan. at 413 (citing *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 [1996]).

The district court relied on evidence the defendant placed his hand on the gearshift level in determining the defendant felt free to go. This evidence, apparently, is the only evidence upon which the court based its decision the defendant felt unrestrained by the officer. We further note that, according to Trooper Jimerson, the defendant was told the officer was finished with him at the time the license and registration were returned.

In contrast, the record undisputably demonstrates that Trooper Jimerson activated his emergency lights to stop the defendant's vehicle. After returning the defendant's license and registration, the trooper did not move away from the car but immediately asked if the defendant would answer some questions. During this time, Officer Oehm was standing near the defendant's vehicle. When two officers are standing next to a stopped vehicle, presumably with the emergency lights in the patrol vehicles still activated, no reasonable person would feel free to drive away. See *State v. Morris*, 276 Kan. 11, 22-23, 72 P.3d 570 (2003) (discussing a string of cases dealing with the use of emergency lights as a show of authority). Under the circumstances presented in this record, the further detention of the defendant cannot be deemed consensual.

The defendant further contends that Trooper Jimerson did not possess reasonable articulable suspicion to justify any further detention. Because the challenged detention was not consensual, the trooper had to be able to articulate a reasonable suspicion that the defendant was engaged in a criminal venture to justify the detention. See *DeMarco*, 263 Kan. at 734.

" '[W]e judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." ' " *DeMarco*, 263 Kan. at 735 (quoting *Mendez*, 118 F.3d at 1431; citing *United States v. Sokolow*, 490 U.S. 1, 7, [104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989)]).

In *DeMarco*, the investigating officer testified that eight factors had contributed to his suspicion that DeMarco and Bennici were transporting drugs: (1) DeMarco was nervous when the trooper first approached and continued to grow more nervous; (2) the men were traveling across the country from a known source city for narcotics; (3) the route traveled was not a direct route to their destination; (4) the men were driving a rented vehicle; (5) they were traveling on I-70, a known drug corridor; (6) the rental agreement required the car to be returned in 3 days; (7) the two men provided inconsistent stories about how one of them had reached California; and (8) the trooper was aware that one or both of the men possessed a criminal history.

In affirming the district court's suppression of the drugs, the *DeMarco* court examined a series of cases involving nervousness during a traffic stop as a factor an officer may use to establish a reasonable suspicion of illegal activity. Quoting *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997), the court stated:

" 'It is certainly not uncommon for most citizens—whether innocent or guilty— to exhibit signs' of nervousness when confronted by a law enforcement officer [Citations omitted.] Trooper Jimerson had no prior acquaintance with Mr. Wood which enabled the trooper to contrast Mr. Wood's behavior during the traffic stop

with his usual demeanor. [Citations omitted.] . . . Mr. Wood's demeanor during the detention must be discounted given the generic claim of nervousness.' 106 F.3d at 948." *DeMarco*, 263 Kan. at 736.

While acknowledging that nervousness in conjunction with other factors may supply a basis for reasonable suspicion, the *DeMarco* court concluded that none of the other factors cited by the trooper during the suppression hearing were particularly probative of criminal activity under the facts presented. 263 Kan. at 739-41.

Many of the factors upon which Trooper Jimerson relied upon in *DeMarco* are similar to the factors cited by Trooper Jimerson in this case. The defendant appeared more nervous than typical drivers during a routine traffic stop. However, as indicated in *DeMarco*, Trooper Jimerson had no prior interactions with this particular defendant to base his opinion that the defendant's symptoms of nervousness were indicative of criminal activity. As a result, while this factor can be considered, it is not alone indicative of criminal activity.

Here, prior to the termination of the traffic stop, the investigating officers learned that the defendant was traveling across the country from Las Vegas to Baltimore. Unlike in *DeMarco*, the route used was a reasonably direct route between those destinations. However, the vehicle driven by the defendant was not registered to him. These are factors a court may consider in determining whether an officer possessed reasonable suspicion to justify a longer detention than required to effect the traffic stop, albeit very weak factors. See 263 Kan. at 740-41.

Finally, Trooper Jimerson noted a scent of fabric softener dryer sheets, which he testified are commonly used to mask the odor of illegal drugs. While the smell of dryer sheets alone would not support a reasonable articulable suspicion of drug activity, this factor represents a significant departure from the facts of *DeMarco*, as this factor relates specifically to a known technique related to drug trafficking.

Several jurisdictions which have considered the probative value of the odor of dryer sheets in a vehicle have concluded that such a factor, even when combined with nervousness, does not constitute reasonable suspicion justifying detention of a driver. See, *e.g.,*

*State v. Thompson*, 256 Ga. App. 188, 190, 569 S.E.2d 254 (2002) (detention not justified by reasonable suspicion when based solely upon nervousness and the odor of laundry detergent or dryer sheets); *Rios v. State*, 762 N.E.2d 153, 157 (Ind. App. 2002) (seizure and search of package was not justified by reasonable suspicion based entirely upon a sender's mailing address in California, a next-day air package mailing, and a scent of dryer sheets); *Commonwealth v. Phinn*, 761 A.2d 176, 186 (Pa. Super. 2000) (although a "close case," the driver's furtive behavior as officer approached vehicle and the odor of dryer sheets was insufficient to support reasonable suspicion).

However, the Eighth Circuit Court of Appeals has concluded that a strong odor of a known masking agent, such as laundry detergent, is highly probative of illegal drug activity. See *United States v. Pollington*, 98 F.3d 341, 343 (8th Cir. 1996) (detention was justified by the driver's nervousness, the strong smell of a masking agent, and the use of a motor home to drive from Michigan to Las Vegas); *United States v. Bloomfield*, 40 F.3d 910, 918-19 (8th Cir. 1994), *cert. denied* 514 U.S. 1113 (1995) (detention was justified by the strong smell of a masking agent, the driver's possession of a pager, and the driver's nervousness).

Furthermore, in *United States v. Carrate*, 122 F.3d 666, 669 (8th Cir. 1997), the Eighth Circuit Court of Appeals concluded that a detention following a valid traffic stop was justified by the following factors: (1) The driver was not the registered owner of the vehicle; (2) the driver was traveling from California to Illinois; (3) California is a known source state for illegal narcotics; (4) Chicago is a known destination for illegal narcotics; (5) the driver carried little clothing; (6) the 6-year-old vehicle had high mileage; and (7) the driver possessed a criminal record in California.

In the present case, Trooper Jimerson articulated the following suspicious factors justifying the further detention: The defendant was driving a vehicle which was not registered to him; the driver was traveling from Las Vegas to Maryland; the driver carried little clothing; the interior of the vehicle smelled of dryer sheets, a known masking agent for illegal drugs; and the driver demonstrated severe nervousness.

While it may be a close case, we believe that under these circumstances a reasonably prudent law enforcement officer would have possessed a suspicion the vehicle was being used for drug trafficking. It was reasonable, therefore, for Trooper Jimerson to ask further questions of the defendant. Thereafter, the defendant's consent to the search of the vehicle justified the continued detention and search of his property.

The defendant contends his consent to the search was coerced and that Trooper Jimerson exceeded the limited scope of the consent that was given. In determining whether consent to search was voluntary, a district court should consider whether there was evidence of threats or coercion, whether the person subject to the search was informed of his or her right to deny consent, and the mental capacity of the person subject to the search. Nevertheless, knowledge of the right to refuse consent is not a prerequisite to a finding of voluntariness. See *State v. Holmes*, 278 Kan. 603, 611, 102 P.3d 406 (2004).

Here, the evidence is merely that the trooper requested permission to search while standing at the passenger side window. Neither officer drew their service weapon, and no threats were made to detain the defendant to obtain a drug dog if he did not submit to a search of his vehicle. The record does not demonstrate the defendant failed to understand what the trooper was requesting. Under the totality of the circumstances, the defendant's consent was not coerced but constituted the product of his free will.

The defendant further contends the search exceeded the scope of the defendant's consent, which was limited to the duffle bag containing laundry. This argument relies upon the defendant's testimony in which he claimed that he authorized Trooper Jimerson to search only his bag. The trooper's testimony differed substantially. Trooper Jimerson claimed he requested permission to search in general and the defendant stated words to the effect that the trooper could look anywhere he wanted. The district court adopted the trooper's testimony, and this court does not evaluate the credibility of witnesses or weigh the evidence presented at the district court. See *State v. Green*, 32 Kan. App. 2d 789, 792, 89 P.3d 940, *rev. denied* 278 Kan. 849 (2004). Consequently, this court must

adopt the district court's finding that the scope of the search was not limited by the defendant's consent.

Finally, the defendant argues that even if the court adopted Trooper Jimerson's testimony and believed the defendant had given general consent to search the vehicle, such consent did not extend to dismantling the vehicle on the roadside. As persuasive precedent in support of his position, the defendant cites *People v. Gomez*, 5 N.Y.3d 416 (2005).

In *Gomez*, an officer obtained general consent to search the defendant's vehicle. In conducting the search, the officer unlatched and pulled forward the rear passenger seat, revealing the carpeted floorboard beneath the seat. Over an area of the vehicle in which the gas tank was normally housed, the carpet had been replaced. Having previously observed fresh undercoating in the same relative area during an examination of the undercarriage, the officer pulled up the carpet and pried open a sheet metal covering over an opening in the floorboard. The opening led to a compartment portion of the gas tank which contained cocaine.

The New York Court of Appeals determined the officer's conduct exceeded the objectively reasonable scope of the search authorized or extended by the defendant's general consent. Recognizing that a consent to search generally includes readily opened containers within the vehicle, the court distinguished the officer's conduct, which "impair[ed] the structural integrity of [the] vehicle or . . . result[ed] in the vehicle being returned in a materially different manner than it was found." 5 N.Y.3d at 420. The New York Court of Appeals likened the officer's conduct in *Gomez* to the breaking open of a locked briefcase found within a trunk during a consensual search, as discussed in *Florida v. Jimeno*, 500 U.S. 248, 251-52, 114 L. Ed. 2d 297, 111 S. Ct. 1801 (1991). *Gomez*, 5 N.Y.3d at 419-20.

While the facts of this case are distinguishable from the *Gomez* case to the extent the record reveals no evidence that Trooper Jimerson employed excessive force to pry open the quarter panel concealing the marijuana in this case, the reasoning of the New York Court of Appeals is persuasive, especially in light of the dicta from *Jimeno*, 500 U.S. at 251-52. The defendant's consent did not

extend to pulling plastic molding away from the quarter panel of the interior of the defendant's vehicle, even if the molding was hinged to form a compartment.

Nevertheless, as the New York Court of Appeals suggested, an officer's actions in dismantling a vehicle along the roadway might be justified if the officer obtained specified consent to the more intrusive search or if the limited general search provided the officer with probable cause to conduct the more intrusive search. 5 N.Y.3d at 420.

Probable cause does not require evidence of the crime sufficient to prove guilt beyond a reasonable doubt but merely requires sufficient evidence to lead a reasonable person to believe that a specific crime has been committed by a specific person or persons. See *State v. Mayberry*, 248 Kan. 369, 377, 807 P.2d 86 (1991). In the context of a search, probable cause means such information as would lead a reasonably prudent person to believe that a crime has been committed and that evidence of the crime may be found on a particular person, in a specific place, or within a specific means of conveyance. See *Mayberry*, 248 Kan. at 377 (quoting *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 [1982]).

The defendant's general consent to search enabled Trooper Jimerson to search all readily opened containers and compartments within the vehicle, including the ashtray. See *Jimeno*, 500 U.S. at 251. Once Trooper Jimerson removed the ashtray, the hinge to the compartment made in the quarter panel of the vehicle was revealed, suggesting a secret compartment covered by "non-factory" felt. The most obvious purpose of creating a secret compartment is to conceal contraband. While the existence of a secret compartment alone is insufficient to lead a reasonably prudent person to believe that contraband is actually contained in the vehicle, the secret compartment in conjunction with the smell of fabric softener sheets, associated with masking the odor of drugs, creates probable cause to believe the secret compartment contained drugs.

Although probable cause was not the basis upon which the district court upheld the seizure of the marijuana, the ultimate legality of a search is a question of law over which this court has unlimited review. See *Green*, 32 Kan. App. 2d at 792. Even though Trooper

Jimerson erroneously relied upon the defendant's consent, it is clear that the officer reasonably believed the secret compartment concealed drugs. Because the facts support an objective finding of probable cause, the district court's finding that the seizure of the marijuana from the defendant's vehicle was not accomplished in violation of the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights is affirmed.

## Motion for Continuance

The defendant next claims the district court failed to grant his motion for continuance based upon new evidence. The resolution of a motion for continuance rests within the broad discretion of the district court, and an appellate court will not disturb the district court's ruling unless the party alleging an abuse of that discretion demonstrates that no reasonable person would have taken the view adopted by the district court. *State v. Meeks*, 277 Kan. 609, 616, 88 P.3d 789 (2004).

As the defendant asserts in this appeal, the defense theory relied upon the defendant's ignorance of the drugs. According to the defendant, he merely borrowed the vehicle to drive to a reunion of some military buddies. He borrowed the vehicle from the brother of a friend from work. The name of the person given by the defendant was not the name of the person to whom the vehicle was registered. This person who allegedly allowed the defendant to borrow the vehicle was indicted on federal drug charges approximately 3 weeks before the defendant's trial.

The day of trial, defense counsel moved for a continuance to obtain certified copies of court documents pertaining to the federal drug charges, claiming the defendant had not notified defense counsel until the day of the defendant's trial. The district court failed to see the relevance of the evidence sought by the defendant. The court further found the motion was not timely and the facts contained in the proffered evidence would not assist the defendant's defense. Consequently, the court denied the motion.

The district court committed no abuse of discretion. By the defendant's own admission, he had been aware of the arrest of Douglas Brooks 3 weeks prior to his trial. While the defendant claims to

have been afraid for his family until he was certain that Brooks posed no threat, there was no explanation why revealing this information to his defense attorney would have jeopardized the life of the defendant's family. The defendant's attorney was capable of making discreet inquiries to the federal district court in Baltimore. Consequently, the district court properly determined the motion for a continuance was not sought in a timely manner.

Moreover, the record clearly indicates the district court allowed the defendant to testify about Brooks' incarceration on federal drug charges. The defendant's testimony went unrefuted by the prosecution. Nevertheless, the defendant failed to draw any logical connection between Brooks' drug activities and the drugs seized from the defendant's vehicle. Even assuming the drugs belonged to Brooks, the evidence supported a finding the defendant was transporting the drugs across the country for Brooks. Thus, the defendant could have been convicted of possession of marijuana with the intent to deliver or distribute, regardless of Brooks' role in the ultimate drug transaction. The district court clearly considered the testimony and rejected the defendant's claim that he unknowingly transported the drugs.

The evidence sought through a continuance would have had no impact on the course of the trial. The district court did not abuse its discretion in refusing to grant defense counsel's request for a continuance.

For similar reasons, the defendant's claim that the district court improperly denied his motion for a judgment of acquittal or a new trial must fail. Again, this court reviews the claim for an abuse of the district court's discretion. See *State v. Harris*, 279 Kan. 163, 176, 105 P.3d 1258 (2005).

In doing so, the court applies a two-part test to determine whether a new trial was warranted. First, the defendant must establish that the proffered evidence could not have been produced at trial with reasonable diligence. See 279 Kan. at 176. Clearly, the evidence proffered at the beginning of the trial was known to the defendant 3 weeks earlier. The proffered evidence was not newly discovered. Second, the defendant must demonstrate that the evidence was so material that its production would create a reason-

able probability of a different result upon retrial. See 279 Kan. at 176. As discussed, the proffered evidence would not have added credibility to the defendant's testimony. The evidence would not have demonstrated that the defendant had no knowledge of the drugs within the car. Consequently, the proffered evidence possessed no materiality to the ultimate issues in this case. The district court did not abuse its discretion in denying the motion for a new trial.

Affirmed.

GREENE, J., dissenting: As recognized by my colleagues, the issue of reasonable suspicion to extend the detention of defendant Moore is "a close question." With due respect, I would conclude that Trooper Jimerson had insufficient factors to establish reasonable suspicion, thus requiring reversal.

Trooper Jimerson relied on the following factors: (i) Moore was driving a vehicle which was not registered to him; (ii) Moore was traveling from Las Vegas to Maryland; (iii) Moore carried little clothing; (iv) the interior of the vehicle smelled of fabric softener dryer sheets, a known masking agent for illegal drugs; and (v) Moore demonstrated severe nervousness. Moore had reasonable and plausible explanations for both his possession of the vehicle and his route. Nervousness must be discounted, as recognized by the majority. Accordingly, this case turns on the impact of the perception by the officer of the odor of fabric softener dryer sheets.

I respectfully suggest that the Eighth Circuit Court of Appeals' cases relied upon by the majority do not reflect the better approach to this problem, nor can they be squared with controlling authority from our own Kansas Supreme Court. As noted by the majority, most jurisdictions have concluded that the mere odor of dryer sheets, even when coupled with one or more mildly suspicious factors, does not support a finding of reasonable suspicion of criminal activity. See the cases cited by majority from Indiana, Pennsylvania, and Georgia. Moreover, when the factors deemed insufficient for reasonable suspicion by our Supreme Court in *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998), are compared with the factors deemed adequate for reasonable suspicion by the

Eighth Circuit Court of Appeals in *United States v. Carrate*, 122 F.3d 666, 669 (8th Cir. 1997), it is clear that the Eighth Circuit has a far more generous view of such factors than does our Kansas Supreme Court. Arguably, the factors deemed adequate in *Carrate* are considerably less weighty than those deemed insufficient in *DeMarco*. Accordingly, the majority's reliance on the Eighth Circuit authorities seems misplaced.

As acknowledged by the majority, Moore's extended detention cannot be viewed as consensual. Given my view that the officer had inadequate information to form a reasonable suspicion of criminal activity, Moore should not have been detained for further questioning or the resulting search. In Kansas, our Supreme Court has been clear in stating that in the absence of consent or reasonable suspicion of criminal activity, extended detention is unwarranted.

"A law enforcement officer conducting a routine traffic stop may request a driver's licence and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid licence and proof that he or she is entitled to operate the car, the driver must be allowed to proceed on his or her way, without being subject to further delay by the officer for additional questioning. In order to justify a temporary detention for questioning, the officer must also have reasonable suspicion of illegal transactions of drugs or of any other serious crime." *State v. Mitchell*, 265 Kan. 238, Syl. ¶ 4, 960 P.2d 200 (1998).

Although the trooper's unwillingness to allow Moore to proceed on his way may have resulted in a fruitful search, the search violated Moore's right to be free of unreasonable searches and seizures and should have been suppressed. I would reverse the district court and suppress the fruits of the search of Moore's vehicle. See *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).