(133 P.3d 146)

No. 94,313

STATE OF KANSAS, *Appellee,* v. SLONE C. HAYES, *Appellant.*

Opinion filed April 28, 2006.

*Randall E. Fisher*, of Law Office of Randall E. Fisher, of Newton, for appellant.

*Michael X. Llamas,* assistant county attorney, and *Phill Kline,* attorney general, for appellee.

Before MCANANY, P.J., PIERRON and CAPLINGER, JJ.

CAPLINGER, J.: Slone Hayes appeals the district court's denial of her motion to suppress and motion to dismiss for lack of jurisdiction. She argues the police officer who stopped the vehicle in which she was a passenger was outside of his jurisdiction at the time of the stop, requiring dismissal of the charges. She further asserts that the stop was unlawful because the driver of the vehicle was detained longer than necessary for purposes of the initial traffic stop, and the driver's subsequent consent was tainted by the illegal stop.

We affirm the trial court's denial of Hayes' motion to dismiss, finding the officer had jurisdiction to make the stop pursuant to K.S.A. 2005 Supp. 22-2401a(2)(b). However, we reverse the trial court's denial of Hayes' motion to suppress based upon our conclusion that the driver was detained longer than necessary to complete the traffic stop and her subsequent consent did not purge the taint of the illegal detention.

*Background*

On October 18, 2004, at 2:25 a.m., City of Newton Police Officer Bryan Hall responded to a call for assistance from a fellow officer located at mile marker 33 on Interstate 135 (I-135) in Newton. As he traveled east on Highway 50 to I-135 North, Hall left the city limits. However, before Hall arrived at his destination, the call for assistance was cancelled.

Hall continued to travel east on Highway 50, knowing he would reenter the city limits at the Anderson Avenue exit. Just before he reached that exit, Hall observed a vehicle east of the exit and within the city limits traveling westbound approximately 8 miles over the speed limit. Hall turned around and caught up with the vehicle outside city limits. Hall activated his emergency lights and pulled the vehicle over.

Officer Hall then proceeded to ask the driver, Cleopatra Nichols, a series of questions, including where she was headed; why she was on Highway 50 east instead of I-135 north; where she lived; why

her vehicle had Virginia plates; and how long she and her passenger, Slone Hayes, had been traveling together. Nichols responded to each of these questions in turn, indicating that she and Hayes were traveling to Junction City from Arkansas, where Nichols had dropped off her child; that she apparently was lost because she thought she was on I-135; that she lived in Junction City but had Virginia license plates because she was in the military, stationed at Fort Riley; and that she and Hayes had been traveling for 2 days.

Officer Hall testified that as he questioned Nichols, he looked for evidence she and Hayes had been traveling. Hall documented his findings in his police report:

> "I noticed even though the two had just taken a trip with a small child, there wasn't a single item of luggage in the passenger's compartment of the vehicle. I noticed a blanket and a coat in the back seat, but no over night bag, children's games, snacks, or beverage containers. I found it odd there would be no luggage or toiletry items for two women taking a two day trip."

Hall returned to his patrol car and ran computer checks, but nothing came back suspect. Hall also called for a back-up officer and waited for the other officer to arrive before again contacting Nichols.

At the preliminary hearing, Hall testified regarding his subsequent contact with Nichols:

> "A. I decided to give the driver a warning.
> "Q. Okay. Did you go inform the driver of that?
> "A. Yes. I contacted the driver and asked her to come back to the back of the car to where I could speak with her and she walked back with me.
> "Q. Okay.
> "A. I gave her back her driver's license and her insurance paperwork and I told her that I wasn't going to write her a ticket and that I would be happy to give her directions back to I-135 so she could head north towards Salina and eventually to Junction City.
> "Q. What happened after that, Officer Hall?
> "A. She said that she was appreciative of that and I asked her that if I could ask her a few questions.
> "Q. Okay. What was her reply?
> "A. She said to go ahead."

Officer Hall's preliminary hearing testimony essentially repeated the information in his police report. Hall's suppression hearing

testimony, however, differed as to his conversation with Nichols when he returned her documentation:

"A. I decided to give the driver a warning, I exited my patrol car, I recontacted her, I asked her if she would step out and come to the back with me. She did.

"I gave her back her information, I told her I was going to give her a warning on the speeding. *And then I told her that as far as that was concerned, we were done* and that I would be happy to give her directions back to I-135 and on to Salina.

"Q. Okay. And what happened next?

"A. Uh, she thanked me for—for giving her a warning and letting her go and being willing to give her directions. I asked her if I could ask her a few questions for a moment, she said, sure." (Emphasis added.)

Rather than provide Nichols with directions as Hall had indicated he would, Hall testified he then questioned Nichols again about her destination and where she had come from. Hall also asked Nichols about her relationship to Hayes and asked if Nichols had any weapons in her car, to which she laughingly responded no. However, according to Hall, when he asked Nichols if she had drugs in her car, she sheepishly responded no. Hall testified this led him to believe there might be narcotics in the vehicle.

Hall then asked Nichols if she minded if he searched her vehicle, and Nichols replied yes, while motioning with her hand towards the vehicle. Hall clarified with Nichols that she was agreeing to permit him to search the vehicle, and she again responded yes. At this point, Hall asked Hayes to step out of the vehicle and stand with the officer who had arrived to assist Hall.

Hall searched the vehicle and found an "Oreo Minis" cup containing a small Ziploc bag of marijuana. The State charged Hayes with possession of a marijuana without a drug tax stamp, possession of marijuana, and possession of drug paraphernalia. However, the State dismissed the tax stamp charge after the subsequent KBI lab report indicated the marijuana weighed less than the 28 grams required to charge the defendant with failure to affix a drug tax stamp. See K.S.A. 79-5202; K.S.A. 79-5204; K.S.A. 2005 Supp. 79-5205; K.S.A. 79-5208.

In the district court, Hayes moved to dismiss for lack of jurisdiction arguing Hall was outside his jurisdiction at the time of the

stop. Hayes also filed a motion to suppress arguing Hall unjustifiably prolonged the detention and Nichols' consent to search was involuntary. At the suppression hearing, the district court denied the motion to dismiss finding Hall had jurisdiction to conduct the stop outside the city limits because he was in "fresh pursuit" pursuant to K.S.A. 2005 Supp. 22-2401a(2)(b).

The district court issued a letter decision denying the motion to suppress based upon a finding the traffic stop became a consensual encounter after Officer Hall returned Nichols' documentation. The district court made no factual findings, provided no legal authority for its decision, but did indicate an intent to issue a more detailed decision at a later time. However, the record contains no such subsequent decision.

At the bench trial, the parties stipulated to the facts presented in the preliminary hearing, the suppression hearing, and the officers' reports. The district court found Hayes guilty of possession of marijuana and possession of drug paraphernalia and noted Hayes reserved her right to appeal the legal issues raised in her prior motions.

Hayes appeals, arguing the district court erred in finding Officer Hall had jurisdiction to conduct the traffic stop pursuant to K.S.A. 2005 Supp. 22-2401a(2)(b). She further argues the district court erroneously denied her motion to suppress because the driver and she were detained longer than necessary to complete the traffic stop, and the driver's subsequent consent did not purge the taint of the illegal detention. Finally, Hayes argues the district court erred by finding sufficient evidence to bind her over for trial on the charge of possession of a controlled substance without a tax stamp.

Initially, we note this latter issue is moot as the State ultimately dismissed the tax stamp charge. See *State v. Aleman,* 16 Kan. App. 2d 784, 786, 830 P.2d 64, *rev. denied* 251 Kan. 940 (1992) ("An appellate court will not render opinions in appeals which present moot issues or where the judgment could have no practical effect on a then-existing controversy.").

*Officer's jurisdiction for the stop*

Hayes first argues the district court erred in denying her motion to dismiss as Hall was outside his jurisdiction at the time of the stop. Because this issue involves interpretation of K.S.A. 2005 Supp. 22-2401a(2)(b), we exercise unlimited review. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

In relevant part, K.S.A. 2005 Supp. 22-2401a(2)(b) states: "Law enforcement officers employed by any city may exercise their powers as law enforcement officers: . . . (b) in any . . . place when . . . in fresh pursuit." K.S.A. 2005 Supp. 22-2401a(9)(d) defines "fresh pursuit" as "pursuit, without unnecessary delay, of a person who has committed a crime, or who is reasonably suspected of having committed a crime."

Without benefit of authority, Hayes argues Hall was not in fresh pursuit because Hall was outside the city limits and not in pursuit of Nichols when he first saw Nichols commit a traffic violation. We find no basis to conclude the "fresh pursuit" provision of K.S.A. 2005 Supp. 22-2401a(2)(b) limited Hall's jurisdiction to stop Nichols' vehicle in this instance. See *City of Prairie Village v. Eddy*, 14 Kan. App. 2d 661, 798 P.2d 66 (1990) (municipal police officer's extraterritorial arrest of defendant was valid as having been made after a fresh pursuit, where officer's pursuit of defendant's vehicle was continuous and without delay and was based upon officer's observation of defendant committing a traffic infraction).

Although Officer Hall was outside the city limits when he observed the traffic violation, Nichols was within the city limits when she committed it. Without unnecessary delay, Officer Hall briefly pursued Nichols and stopped her vehicle just outside the city limits. We agree with the district court that the stop came within the officer's jurisdiction under K.S.A. 2005 Supp. 22-2401a(2)(b), and we thus affirm the denial of Hayes' motion to dismiss.

*Scope of detention*

In arguing the district court erred in denying her motion to suppress, Hayes does not contest the validity of the initial traffic stop but instead maintains Officer Hall detained Nichols and Hayes longer than necessary to complete the traffic stop.

Before considering the merits of Hayes' argument, we note that although Hayes was a passenger in Nichols' vehicle, she has standing to challenge the scope of the stop. See *State v. Epperson*, 237 Kan. 707, 717-18, 703 P.2d 761 (1985) (although passenger had no standing to challenge the search of a car that did not belong to him, he had standing to challenge the search of the vehicle where the search resulted from an illegal stop); see also *State v. Maybin*, 27 Kan. App. 2d 189, 200, 2 P.3d 179, *rev. denied* 269 Kan. 938 (2000) (passenger's right to challenge search of vehicle is a consequence of the illegal seizure of the passenger's person).

When reviewing a motion to suppress evidence, we determine whether the factual underpinnings of the trial court's decision are supported by substantial competent evidence. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. We do not reweigh the evidence. See *State v. Green*, 32 Kan. App. 2d 789, 792, 89 P.3d 940, *rev. denied* 278 Kan. 849 (2004). When the facts material to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004).

A law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. However, when the driver has produced a valid license and proof that he or she is entitled to operate the car, the driver must be able to proceed on his or her way without being subject to further delay by the officer for additional questioning. *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 (1998). Indeed, "[a]n investigative detention must last no longer than is necessary to effectuate the purpose of the stop.[Citation omitted.]" *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998). Further questioning is permissible only if (1) the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning or (2) during the traffic stop, the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity. See *DeMarco*, 263 Kan. at 734.

Here the State does not suggest Officer Hall had reasonable suspicion to subject Nichols to additional questioning. Instead, the State maintains the stop became a consensual encounter when Hall returned Nichols' documentation and she agreed to answer more questions.

Although Hall had returned Nichols' documentation at that time he asked her to answer a few more questions, this "does not always indicate that an encounter has become consensual." *United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997). In determining whether an encounter between an officer and citizen has ceased to be a detention and has instead become a consensual encounter, we consider whether a reasonable person in the defendant's position would feel free " ' "to disregard the police and go about his business." ' " *State v. Reason*, 263 Kan. 405, 410, 951 P.2d 538 (1997). In conducting this analysis, we must consider the totality of the circumstances. *State v. Moore*, 34 Kan. App. 2d 795, 802, 124 P.3d 1054 (2005) (citing *Anderson*, 114 F.3d at 1064).

Several objective factors may indicate a coercive show of authority, including the presence of more than one officer, the display of a weapon, physical contact by the officer, or use of a commanding tone of voice. *Moore*, 34 Kan. App. 2d at 802. Further, in considering whether the detention becomes a consensual encounter, the court may consider whether the officer informed the person subject to the traffic stop of the freedom to depart. Nevertheless, a law enforcement officer is not required to inform an individual of his or her right to terminate the encounter. *Moore*, 34 Kan. App. 2d at 802 (citing *Reason*, 263 Kan. at 413).

Here, Officer Hall stopped Nichols for speeding at approximately 2:25 a.m. and activated his emergency lights. A second officer was called to provide back-up. At the time Officer Hall returned Nichols' documentation, Nichols was standing outside of her vehicle in front of both officers and both patrol vehicles, as she had been requested to do by Officer Hall. According to his testimony at the preliminary hearing, Officer Hall did not indicate whether Nichols was free to go at that time. Assuming the trial court accepted Officer Hall's suppression testimony, however, then

Officer Hall told Nichols "as far as that [is] concerned, we [are] done."

In determining whether the officer exceeded the scope of the initial stop when he asked Nichols to answer further questions after returning her documentation, we are guided by the court's analysis in *Moore*, 34 Kan. App. 2d 795. There, the defendant was stopped for a traffic infraction and as the officer returned the defendant's documentation, he told the defendant he was "finished with him" or had nothing further for him. 35 Kan. App. 2d at 802. The officer then immediately asked the defendant to answer questions, without moving away from the defendant's vehicle. Another officer on the scene also was standing next to the defendant's vehicle.

The *Moore* court concluded no reasonable person would have felt free to leave under these circumstances. The court held: "When two officers are standing next to a stopped vehicle, presumably with the emergency lights in the patrol vehicles still activated, no reasonable person would feel free to drive away." 34 Kan. App. 2d at 802 (citing *State v. Morris*, 276 Kan. 11, 22-23, 72 P.3d 570 [2003]). Ultimately, the court found the defendant's continued detention was justified by the officer's reasonable suspicion of drug trafficking. 34 Kan. App. 2d at 803-06.

The facts here present an even more compelling basis to find that a reasonable person would not have felt free to go. Here, when Officer Hall returned Nichols' documentation, she was not even in her vehicle. Rather, in order to receive her warning citation, Nichols was required exit and stand outside of her vehicle in the presence of two officers and in front of both patrol vehicles, with emergency lights flashing. Further, instead of telling Nichols she was free to go, or that he had nothing further for her, Officer Hall told Nichols "as far as *that* [is] concerned we [are] done." (Emphasis added.)

We believe that under the circumstances, this statement would imply to a reasonable person that other matters remained to be addressed, particularly where, as here, the statement was followed by the officer's offer to provide Nichols with directions. Significantly, even though this offer was accepted by Nichols, Officer Hall did not immediately give her directions or walk her back to her

vehicle. Rather, he asked her if he could ask her a few more questions.

Under the totality of the circumstances, we conclude that at the time Officer Hall returned Nichols' documentation and issued her a warning citation, a reasonable person would have felt additional matters remained to be addressed before the encounter could be terminated and would not have felt free to go. We therefore hold that Nichols' agreement to answer additional questions was not consensual and Officer Hall's questioning of Nichols following the return of her documentation exceeded the scope of the traffic stop.

*Nichols' consent to search*

Having concluded Nichols and Hayes were unlawfully detained beyond the scope of the stop, we must next consider whether Nichols' consent to search purged the taint of the detention's illegality. See *Reason,* 263 Kan. at 409-10. "Consent to search removes the taint of a prior illegal seizure if it was voluntarily given under the totality of the circumstances." *State v. Grace,* 28 Kan. App. 2d 452, 460, 17 P.3d 951, *rev. denied* 271 Kan. 1039 (2001). The district court did not reach this issue because it concluded the stop became consensual prior to Hall obtaining consent. Nevertheless, this court may decide the issue if the record on appeal is sufficient to do so. 28 Kan. App. 2d at 456.

Factors to be considered in determining whether consent purged the taint of an illegal detention are " 'the proximity in time of the Fourth Amendment violation and the consent, intervening circumstances, and particularly the "purpose and flagrancy" of the officers' misconduct.' [Citations omitted.]" *State v. Rice,* 264 Kan. 232, 242, 955 P.2d 1258 (1998).

Here, Hall asked Nichols for consent to search her vehicle *during* the illegal detention, and no intervening circumstances separated the consent from the illegality. Moreover, while there is no evidence the stop was pretextual, Hall's testimony indicates his focus quickly changed from investigating a traffic violation to investigating general "criminal activity."

Significantly, Officer Hall's amorphous suspicion of "criminal activity" was based on little more than the lack of luggage and

children's toys in the passenger compartment of the vehicle. Moreover, Hall's testimony indicates his suspicion did not become focused on narcotics until after he asked Nichols if she had drugs in her car—a question which occurred during the illegal detention after Hall had returned Nichols' documents. Further, Hall testified he thought Nichols and Hayes were being truthful during his initial questioning, and there is no evidence Hall feared for his safety at any time.

Thus, it appears Officer Hall requested that Nichols step out of the vehicle for the purpose of obtaining consent and ultimately to search the vehicle based on nothing more than a nonparticularized hunch of criminal activity.

Accordingly, under these circumstances, we conclude Nichols' consent did not purge the taint of the illegal detention. We thus reverse the district court's denial of Hayes' motion to suppress the evidence found in the search of the vehicle, reverse her subsequent convictions, and remand to the district court for further proceedings in accordance with this opinion.

Reversed and remanded.