[838 NE2d 1271, 805 NYS2d 24]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIX GOMEZ, Appellant.

Argued September 8, 2005; decided October 25, 2005

## POINTS OF COUNSEL

*Gayle Pollack,* New York City, and *Robert S. Dean* for appellant. A driver's general consent to a car search does not allow the police to engage in a destructive search. (*People v Gonzalez,* 39 NY2d 122; *Bumper v North Carolina,* 391 US 543; *People v Mitchell,* 211 AD2d 553; *Florida v Jimeno,* 500 US 248; *People v Calvo,* 1 AD3d 605; *People v Bryant,* 245 AD2d 1010; *People v Saunders,* 161 AD2d 1202; *United States v Snow,* 44 F3d 133; *People v Andeliz,* 3 Misc 3d 384; *United States v Restrepo,* 890 F Supp 180.)

*Robert M. Morgenthau, District Attorney,* New York City (*Megan E. Joy* and *Gina Mignola* of counsel), for respondent. The hearing court properly determined that the police lawfully searched defendant's car based on defendant's valid consent and probable cause. (*People v Ingle,* 36 NY2d 413; *People v Mitchell,* 211 AD2d 553; *People v Battaglia,* 86 NY2d 755; *People v Hollman,* 79 NY2d 181; *People v Barreras,* 253 AD2d 369; *People v Rizzo,* 40 NY2d 425; *People v Shabazz,* 99 NY2d 634; *People v Wheeler,* 2 NY3d 370; *People v Valerio,* 95 NY2d 924; *People v Carvey,* 89 NY2d 707.)

## OPINION OF THE COURT

CIPARICK, J.

The question presented by this appeal is whether a police officer may conduct a destructive search of an automobile based on a suspect's general consent to search. We conclude as a matter of law that the search here exceeded the scope of defendant's consent.

Just past midnight on September 27, 2001, Sergeant William Planeta and his partner, Officer Joseph Agresta, spotted a black 1993 Honda with tinted windows. A computer check on the car failed to turn up any negative information. After following the car for approximately 20 blocks, the officers pulled it over for excessively tinted windows—a violation of Vehicle and Traffic Law § 375 (12-a) (b). While his partner spoke with defendant driver, Planeta approached the vehicle, looked through the passenger window and then, as was his custom in car stops, inspected the undercarriage of the car for evidence of a hidden compartment. As Planeta testified, based on his expertise in

narcotics trafficking, the undercarriage of a vehicle can offer telltale signs of secret compartments. Accordingly, he checks the undercarriage of virtually every car he stops.

Planeta, upon his inspection, noticed a fresh undercoating around the gas tank. Meanwhile, defendant handed Agresta the relevant documents which revealed a tampered registration card. The word "Company" had been removed from the name on the registration card so that it read "Anna Teodora Fermin" rather than "Anna Teodora Fermin Company." The darkly tinted windows, fresh undercoating near the gas tank and altered registration led Planeta, who had been involved in other narcotics arrests, to suspect that the vehicle may have been used to transport drugs. Planeta then asked defendant whether he had "[g]uns, knives, cocaine, heroin, [or] marijuana," to which defendant responded "No." Planeta followed this question with a request for consent to search the car, which defendant gave.

Upon obtaining consent to search, Planeta directed defendant and the passenger to the rear of the car, where the two officers patted them down and instructed them to sit on the rear bumper and wait. Planeta immediately went to the rear seat, unlocked it and pulled it back. He observed gray "non-factory" carpet in the location above the area where he earlier spotted fresh undercoating. He then pulled up the glued carpeting and discovered a cut in the floorboard. Planeta used his pocket knife to twist open the sheet metal. After struggling to reach what he thought was a plastic bag, Planeta returned to his cruiser and retrieved a crowbar, which he used to pry open part of the gas tank. The officers ultimately recovered seven bags of cocaine weighing approximately $1\frac{1}{2}$ pounds from the compartment found in the gas tank.

Arrested and issued a summons for illegally tinted windows and an expired inspection sticker, defendant was subsequently indicted for criminal possession of a controlled substance in the first and third degrees and criminal possession of a forged instrument in the second degree.

Defendant moved to suppress the drugs claiming that there had been no voluntary consent to search the car and that, even if there were, the search exceeded the scope of the consent.[1] Supreme Court denied the motion after a hearing, finding that

---

1. On this appeal, defendant does not contest the voluntariness of his consent to search the vehicle but contests only the scope of his consent. We

defendant had voluntarily consented to a search and that the search conducted was within the scope of the consent, in that defendant never expressly limited or revoked his permission to search. The court reasoned in the alternative that in the absence of consent, probable cause existed to justify the search.

Defendant was convicted on his guilty plea of criminal possession of a controlled substance in the second degree. In affirming defendant's conviction, the Appellate Division left undisturbed the credibility determinations of the suppression court and agreed that defendant's consent was voluntary. The Court further concluded that the officer did not exceed the scope of defendant's consent in light of "defendant's failure to place any limitations on the search, and his failure to object to the search as it was conducted" (11 AD3d 333, 334 [1st Dept 2004]). The Court did not address the alternative grounds relied on by the suppression court in denying the underlying motion. We now reverse and remit the matter to the Appellate Division to address the remaining issues.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v Jimeno*, 500 US 248, 251 [1991] [citations omitted].) In *Jimeno*, the United States Supreme Court held that when an officer explains that he is searching for narcotics, a general consent to search a car permits examination of a folded brown paper bag on the floor of the vehicle (*see Jimeno*, 500 US at 251). The Court noted, however, that "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk" (*Jimeno*, 500 US at 251-252).

Relying on *Jimeno*, the Second Circuit has held that "[b]ased on the plain meaning of the word 'search,' an individual who consents to a search of his car should reasonably expect that readily-opened containers discovered inside the car will be opened and examined" (*United States v Snow*, 44 F3d 133, 136 [1995]). Here, however, the challenged police action went beyond the inspection of a paper bag or a readily opened container. Here the officer damaged the vehicle by removing attached carpeting and physically altering sheet metal with a crowbar.

note that the Appellate Division did not disturb the suppression court's finding of consent to search—a finding that is supported by the record.

"The scope of a search is generally defined by its expressed object" (*Jimeno*, 500 US at 251). As both sides here agree, a general consent to search, on its own, does not give an officer unfettered search authority. In the absence of other circumstances indicating that defendant authorized the actions taken by police, a general consent to search alone cannot justify a search that impairs the structural integrity of a vehicle or that results in the vehicle being returned in a materially different manner than it was found. A reasonable person would not have understood the officer's request to search to include prying open a hole in the floorboard and gas tank with a crowbar. Here, the officer clearly crossed the line when he took this action without first obtaining defendant's specific consent.[2]

In determining the scope of consent, a suppression court must look to the exchange between the parties—both the request and the response—and any attendant circumstances to determine whether a suspect was reasonably put on notice that the search would likely cause damage. Once a search exceeds the objectively reasonable scope of a voluntary consent, a more specific request or grant of permission is needed, in the absence of probable cause, in order to justify damage to the searched area or item sufficient to require its repair.

We cannot agree with the dissent that Fourth Amendment jurisprudence must strive to avoid rules. In addition to providing the rationale for resolution of particular cases, rules give necessary guidance to lower courts and to police. Police officers are well served when they are advised, in advance, as to whether their proposed conduct will be lawful. For this reason, we today set forth a standard that both provides guidance and retains flexibility. It is the dissent that insists on brightening this principle into what it characterizes as a "bright-line rule[ ]" (dissenting op at 421).

The dissent, moreover, confuses two completely different questions—the reasonableness of a search and the scope of consent. We do not suggest "that a 'damaging' search is per se unreasonable" (*id.* at 423)—we leave it to the Appellate Division to review the reasonableness of the search under the probable cause standard. We conclude only that it was unreasonable for the police

---

**2.** Since the search as a whole, including the use of a crowbar to pry open the gas tank, clearly exceeded the scope of the consent, we need not decide whether pulling up the carpet and twisting a knife in the floorboard opening were in themselves beyond that scope.

officer to interpret defendant's general consent to search as consent to use a crowbar to damage the gas tank.

Although the search here exceeded the scope of defendant's consent, we express no opinion as to whether the search was otherwise supported by probable cause, since regrettably the Appellate Division did not review the factual findings of the suppression court on this issue (*see* CPL 470.15).

Accordingly, the order of the Appellate Division should be reversed and the case remitted to that Court for consideration of issues raised but not determined on the appeal.

READ, J. (dissenting). The majority today holds that a search exceeds the scope of a defendant's consent *as a matter of law* whenever it "impairs the structural integrity of a vehicle or . . . results in the vehicle being returned in a materially different manner than it was found" unless there is probable cause or "a more specific request or grant of permission . . . to justify [any] damage to the searched area or item sufficient to require its repair" (majority op at 420). Because the Supreme Court has "consistently eschewed bright-line rules" (*Ohio v Robinette*, 519 US 33, 39 [1996]) in Fourth Amendment contexts, including consent searches (*see id.*; *see also Florida v Jimeno*, 500 US 248, 250 [1991]), I respectfully dissent.

"[T]he touchstone of the Fourth Amendment is reasonableness," not bright-line rules (*Ohio v Robinette*, 519 US at 39, quoting *Florida v Jimeno*, 500 US at 250 [internal quotation marks omitted]). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances" (*Ohio v Robinette*, 519 US at 39; *see also United States v Drayton*, 536 US 194, 206-207 [2002]; *Schneckloth v Bustamonte*, 412 US 218, 232-233 [1973]).

The United States Supreme Court's decision in *Jimeno* is the key precedent addressing the permissible scope of consent searches of automobiles, as the majority would seem to acknowledge. In that case, police officers, after having obtained consent to search Jimeno's car for narcotics, found cocaine in a folded paper bag lying on the floor of the front-seat passenger's side (*see Florida v Jimeno*, 500 US at 249-250). The Florida state courts suppressed the narcotics, applying "a *per se* rule that consent to a general search for narcotics does not extend to sealed containers within the general area agreed to by the defendant" (*id.* at 250 [internal quotation marks omitted]). Notably, the Supreme Court rejected the per se approach of the Flor-

ida courts, an approach indistinguishable from the path taken by the majority today.

In rejecting application of a per se rule, the *Jimeno* court explained that "[t]he Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile" (*id.* at 249). The scope of a suspect's consent hinges on "what would the typical reasonable person have understood by the exchange between the officer and the suspect" (*id.* at 251). Further, "[t]he scope of a search is generally defined by its expressed object" (*id.*).

Similar to *Jimeno*, Sergeant Planeta preceded his request to search by asking defendant whether he had any narcotics or weapons in the car. As the *Jimeno* court pointed out, "[c]ontraband goods rarely are strewn across the trunk or floor of a car" (*id.* [internal quotation marks omitted]). Because "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container," it was therefore "objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs" (*id.*).

Parallel considerations apply here. Drug dealers have grown more sophisticated in their efforts to hide contraband since— indeed, perhaps in response to—*Jimeno*. Narcotics are nowadays frequently concealed in compartments hidden within fuel tanks (*see United States v Flores-Montano*, 541 US 149, 153 [2004] [noting "evidence that smugglers frequently attempt to penetrate our borders with contraband secreted in their automobiles' fuel tank"]). So, just as "it was objectively reasonable for the police to conclude" in *Jimeno* that they had consent to search any containers in the car "which might bear drugs" (*Florida v Jimeno*, 500 US at 251), it was objectively reasonable in this case for Sergeant Planeta to believe that he had permission to search any area of defendant's car in which narcotics might be secreted. To support its observation that "[t]he scope of a search is generally defined by its expressed object" (*id.*), the *Jimeno* court cited *United States v Ross* (456 US 798 [1982]), which held that a warrantless search of a car premised not on consent but instead on probable cause—a comparable exception to the warrant requirement—"justifies the search of every part of the vehicle and its contents that may conceal the object of the search" (*United States v Ross*, 456 US at 825).

The paper bag in *Jimeno* was far easier to open than the hidden compartment in this case, but this difference does not automatically place discovery of the compartment's contents beyond the scope of general consent. Indeed, just as a reasonable person might be expected to know that narcotics could be concealed in a hidden compartment, that reasonable person would also be expected to know that a searcher might have to probe or exert some degree of force to open a hidden compartment. After all, these apparatuses are designed to evade detection and defeat easy or inadvertent entry.[1] Sounding in reasonableness as it does, the Fourth Amendment should not be read so as to reward the ingenuity of drug traffickers (*compare United States v Snow*, 44 F3d 133, 135 [2d Cir 1995] ["the term 'search' implies something more than a superficial, external examination. It entails 'looking through,' 'rummaging,' 'probing,' 'scrutiny,' and 'examining internally'"]).

Here, Sergeant Planeta initially gained access to the hidden compartment by widening a preexisting (and suspicious) hole in the floorboard enough to allow the insertion of a pocketknife (*compare United States v Flores-Montano*, 541 US at 155 [holding that disassembling gas tank during border search does not contravene the Fourth Amendment because it "involves a brief procedure that can be reversed without damaging the safety or operation of the vehicle" and also leaving open the question of the reasonableness of "potentially destructive drilling" (*id.* at 154 n 2)]; *see also Carroll v United States*, 267 US 132 [1925] [warrantless search of car for liquor based on probable cause allowed federal agent to rip open upholstery of car seat]).

The majority's conclusion that a "damaging" search is per se unreasonable is premised largely, if not entirely, on dictum in *Jimeno* that "[i]t is very likely unreasonable to think that a suspect, by consenting to a search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk" (majority op at 419, quoting *Florida v Jimeno*, 500 US at 251-252). The *Jimeno* court made that remark when distinguishing a case, *State v Wells* (539 So 2d 464 [Fla 1989], *affd on other grounds* 495 US 1 [1990]), "on which the Supreme Court of Florida relied in affirming the suppression order in" *Jimeno* (500 US at 251). Any unreasonableness in *Wells*, however,

---

1. In this case, the suppression court described the compartment as a separate area welded inside the gas tank with a hinged door operated by a piston attached to the floor with a U-shaped clamp with a belt through it.

stemmed not from "damage," but rather from the greater "expectation of privacy" afforded a piece of locked luggage than an automobile (*State v Wells*, 539 So 2d at 467). Also, the police in *Wells* had requested consent to search only a locked trunk, not the briefcase, and they ultimately opened the briefcase hours later, out of the defendant's presence (*see id.* at 470 [Shaw, J., dissenting]).

Thus, *Wells* (and, by extension, the *Jimeno* court's dictum regarding *Wells*) is not relevant to this case. Unlike *Wells*, the consent search here was conducted contemporaneously with defendant's granting of consent and in his presence. The police did not open something in which defendant might argue that he had a potentially greater privacy interest than he had in the car itself.[2]

Even if the culmination of the search (i.e., the officer's use of the crowbar) exceeded defendant's initial expectations, the Fourth Amendment is satisfied under the totality of the circumstances. In other words, the majority is just wrong to conclude that, as a matter of Fourth Amendment principles, a search resulting in "damage"[3] is per se outside the scope of a general consent. The record of the suppression hearing reveals that de-

---

2. The other case cited by the majority, *United States v Snow* (44 F3d 133 [1995], *supra*), is likewise inapposite. The majority apparently reads *Snow* as standing for the proposition that consent to a car search extends only to "readily-opened" objects and no further (majority op at 419, quoting *United States v Snow*, 44 F3d at 136). The Second Circuit, however, simply concluded that—despite the *Jimeno* court's observation that a search's scope is defined by its expressed object—the failure to inform a suspect of the object of a search did not place contraband discovered in closed bags in the car outside the scope of the suspect's consent (*see id.* at 134-135). Thus, *Snow* does not address the issue presented on this appeal: whether it is objectively reasonable for a suspect fully aware of the object of a search to expect that the searching officer will search "every part of the vehicle and its contents that may conceal the object of the search" (*United States v Ross*, 456 US at 825). Indeed, the *Snow* court pointed out that, in light of the rather uninformed consent there, "[w]e . . . express no view on whether Snow's consent would have extended to items like locked briefcases" (*United States v Snow*, 44 F3d at 135). The *Snow* court also noted that "the term 'search' implies something more than a superficial, external examination. It entails 'looking through,' 'rummaging,' 'probing,' 'scrutiny,' and 'examining internally' " (*id.*). Subsequent to *Snow*, the Second Circuit held that a suspect's consent to a bag search (premised on not much more of an expressed object than in *Snow*) encompassed allowing a police officer to pull apart a sneaker with a false bottom found in the bag (*United States v Mire*, 51 F3d 349, 351-352 [2d Cir 1995]).

3. The suppression court found that the damage to the car in this case was "limited and reasonably necessary to gain access to the gas tank area which was the focus of the search."

fendant watched the search from no more than four feet away. And the suppression court concluded (as factual matters, undisturbed by the Appellate Division and so beyond our review) that defendant had the ability both to communicate with Sergeant Planeta and to see the search as it unfolded. Yet, defendant remained silent as Sergeant Planeta began the search by first folding over the back seat and then pulling up the non-factory installed carpeting. After Sergeant Planeta ceased searching momentarily and walked towards the police car to get a crowbar, defendant maintained his silence. When Sergeant Planeta walked back towards defendant's car with the crowbar, defendant did not speak up. Finally, when Sergeant Planeta reentered defendant's car with the crowbar, defendant still did not ask for the search to be halted.

In light of the totality of the circumstances just described, it was objectively reasonable for Sergeant Planeta to believe that the scope of defendant's consent encompassed the actions he took to search the area of the car above the hidden compartment. As the *Jimeno* court pointed out, "[a] suspect may of course delimit as he chooses the scope of the search to which he consents" (*Florida v Jimeno*, 500 US at 252). Here, defendant never did. I therefore agree with both the suppression court and the Appellate Division that defendant's silence in the face of Sergeant Planeta's evolving actions constituted consent to the search as conducted.

Although the majority would require "a more specific request or grant of permission" (majority op at 420), that is not what the Fourth Amendment commands. Indeed, the Supreme Court has found "no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness" (*Florida v Jimeno*, 500 US at 252). Because defendant's "consent would reasonably be understood to extend to [what occurred here], the Fourth Amendment provides no grounds for requiring a more explicit authorization" (*id.*).

Of course, the majority's new rule may have no practical consequences for this particular case. Whether it does or not will depend upon the outcome of the Appellate Division's review of the suppression court's factual findings related to probable cause. I wonder, though, how law enforcement officers will approach the consent search of a vehicle in the future. The majority has fixed the boundary line separating a reasonable from a "damaging" search for which more specific consent is required at the point where police actions impair the structural integrity

of the vehicle, or would result in the vehicle's being returned in a materially different manner than it was found. The "structural integrity" standard seems relatively straightforward, but the "materially different" standard is vague and may well prove unworkable in the field. Critically, we live in an age when we should be most reluctant to create hard-to-apply rules that hamstring police officers who reasonably suspect that a vehicle contains a hidden compartment—an alteration with few, if any, innocent purposes—which might conceal far more lethal cargo than narcotics (*compare United States v Cortez-Rocha*, 394 F3d 1115, 1125 [9th Cir 2005], *cert denied* — US —, 126 S Ct 105 [2005] [after citing to portions of 9/11 Commission Report, including section discussing Ahmed Ressam, the thwarted Millennium Bomber, court observed that "giving special protection to the contents of a spare tire," which was cut open during a border search, "might simply result in making spare tires the smuggler's—and future Ahmed Ressams—container of choice"]).

Chief Judge Kaye and Judges G.B. Smith, Rosenblatt, Graffeo and R.S. Smith concur with Judge Ciparick; Judge Read dissents in a separate opinion.

Order reversed, etc.