THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHIKI McCLAIN, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH OWENS, Appellant. [878 NYS2d 1]—

Judgment, Supreme Court, New York County (Rena K. Uviller, J.), rendered June 22, 2007, convicting defendant Chiki McClain, upon his plea of guilty, of criminal possession of a controlled substance in the second degree and criminal possession of a weapon in the third degree, and sentencing him, as a second felony drug offender, to concurrent terms of 8 years and $3^1/2$ to 7 years, and judgment, same court (Rena K. Uviller, J., at suppression hearing; Daniel FitzGerald, J., at plea and sentence), rendered November 28, 2007, as amended January 23, 2008, convicting defendant Joseph Owens of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony drug offender whose prior felony conviction was a violent felony, to a term of 10 years, unanimously affirmed.

The hearing court properly denied both defendants' motions to suppress. There is no basis for disturbing the court's credibility determinations (*see People v Prochilo*, 41 NY2d 759, 761 [1977]).

The People established, by clear and convincing evidence, that the police entered the apartment where defendants were arrested only after obtaining the voluntary consent of the apartment's tenant (*see People v Gonzalez*, 39 NY2d 122, 128-131 [1976]). The atmosphere was not unduly coercive, and the tenant was cooperative with the police. Moreover, the tenant later gave written consent to a further search in a document that also confirmed the voluntariness of his initial consent (*see People v Williams*, 278 AD2d 150 [2000], *lv denied* 96 NY2d 764 [2001]). The police acted within what reasonably appeared to be the scope of the tenant's consent (*see People v Gomez*, 5 NY3d 416, 419 [2005]) when they entered the living room where defendants and two other persons were sitting, and observed cocaine and marijuana in plain view. Upon agreeing to show the officers where the other occupants were located, the tenant effectively directed the officers to the rest of the apartment including the living room.

The police reasonably relied on the apparent authority of the

person who granted them entry to consent to a search of the entire apartment (*see People v Adams*, 53 NY2d 1, 9-11 [1981], *cert denied* 454 US 854 [1981]). It was not until after the police entered the living room and saw the drugs in plain view that they learned any facts giving them reason to believe that the part of the living room where the drugs were located was a partitioned-off separate living space rented by the tenant to defendant Owens. We reject defendants' argument that an upturned item of furniture positioned part of the way across the room should have put the police on notice that part of the room might be the separate living quarters of someone other than the person who admitted them into the apartment. At the time the police went past this item and made their plain view observation, all they reasonably knew was that they were in the living room of the apartment's tenant, that an object resembling neither a wall nor a partition was in an odd position, and that other persons of unknown connection to the apartment were present. In any event, even if it reasonably appeared to an outsider that someone's separate space had been carved out of the living room, the means by which the demarcation was accomplished were so limited that Owens should have reasonably expected that the tenant of record might have permitted others to be in a position to view Owens's portion of the room (*see Georgia v Randolph*, 547 US 103, 110-111 [2006]).

Furthermore, the police did not conduct a search "over the express refusal of consent by a physically present resident" (*id.* at 120). After the police found drugs in open view, Owens began asking questions about the basis for the officers' presence. Even assuming this was a refusal of consent, it came too late, because the police had already found the drugs. "[T]here is no evidence that the police [had] removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection" (*id.* at 121).

We have considered and rejected defendants' remaining suppression arguments, as well as McClain's challenge to the manner in which fees and surcharges were imposed (*see People v Guerrero*, 12 NY3d 45 [2009]). Concur—Mazzarelli, J.P., Friedman, Moskowitz and Acosta, JJ.