■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TERRENCE McFARLANE, Respondent. [939 NYS2d 460]—

Order, Supreme Court, Bronx County (Nicholas Iacovetta, J.), entered August 23, 2010, which granted defendant's suppression motion, affirmed.

The record supports the hearing court's finding that defendant did not consent to a search of the car's locked glove compartment.

After a lawful traffic stop, a police officer, having observed a large wad of rolled-up cash, a partly empty liquor bottle, and crushed papers, and having received suspicious responses to his questions, asked defendant if there was anything in the vehicle that he should know about. Defendant answered, "[N]o." The officer then asked, "[D]o you mind if I take a look," or whether it would be okay if he "checked." Defendant replied, "[G]o ahead." After checking the seats and the center console, the officer, without asking, took the keys from the ignition and unlocked the glove compartment, where he found a loaded gun.

"When a search and seizure is based upon consent . . . the burden of proof rests heavily upon the People to establish the voluntariness of that waiver of a constitutional right" (*People v Whitehurst*, 25 NY2d 389, 391 [1969]). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v Jimeno*, 500 US 248, 251 [1991] [citations omitted]). Here, the officer's request to "take a look" into the car or "check" it for contraband could reasonably have been understood to be a request to search the vehicle, possibly to include closed containers, but it did not reasonably imply a request for permission to open the locked glove compartment (*cf. People v Gomez*, 5 NY3d 416, 418-419 [2005] [general consent to search car did not au-

thorize breaking into hidden compartment]). That the officer subjectively intended to search the glove compartment when he made the request is not determinative. Normally, a locked container can only be opened by breaking into it or using a key. A reasonable person in defendant's situation would have assumed that if the officer wanted to open the glove compartment with defendant's consent he would have asked for the key or asked defendant to open it. The officer did neither; after checking the seats and the center console, he simply took the keys from the ignition and opened the glove compartment.

The dissent's reliance on *People v Mitchell* (211 AD2d 553 [1995], *lv denied* 86 NY2d 738 [1995]) is misplaced. In *Mitchell*, the officer asked a defendant if he could "look through" the car, and the defendant responded, "[Y]ou can look through anything you want. It's not my car" (*id.* at 553 [internal quotation marks omitted]).

In view of the foregoing, we find it unnecessary to address any of the procedural or substantive issues presented by defendant's alternative arguments for affirmance. Concur—Andrias, J.P., Sweeny, Acosta and Manzanet-Daniels, JJ.

Saxe, J., dissents in a memorandum as follows: I respectfully disagree with the majority's ruling upholding the suppression of a gun found in the glove compartment of defendant's car. The police lawfully stopped defendant's vehicle for excessive tint on the windows, and upon their observations of a large wad of rolled-up cash, a partly-empty bottle of liquor, and crushed paper cups inside the car, and upon receiving suspicious responses to their questions, they acted properly in asking for consent to search the car's interior. In view of that consent, I see nothing improper in the officer's use of the ignition key to unlock the glove compartment in order to inspect its interior.

In granting suppression, the motion court accepted the officer's testimony that he asked, "[D]o you mind if I take a look" and whether it would be okay if he "checked," and that defendant shrugged his shoulders and said, "[G]o ahead." It concluded that such language did not establish consent to a search. However, the majority does not adopt that portion of the motion court's reasoning; it concedes that the officer's request to "take a look" into the car or "check" it for contraband would have been reasonably understood to be a request to search the vehicle, including visible but closed containers. Yet, it then holds that the request did not reasonably include searching the glove compartment, which happened to be locked. I dissent because I see no reason to make that distinction. In my view, the record does not support the majority's conclusion that defendant's

consent to a search of the interior of the car did not encompass the glove compartment.

The applicable standard is what the typical reasonable person would have understood by the exchange (*see Florida v Jimeno*, 500 US 248, 251 [1991]). This Court has previously interpreted a request to "look through" a car to be the equivalent of a request to search (*see People v Mitchell*, 211 AD2d 553, 554 [1995], *lv denied* 86 NY2d 738 [1995]; *see also United States v Rich*, 992 F2d 502, 506 [5th Cir 1993], *cert denied* 510 US 933 [1993]; *but see People v Hall*, 35 AD3d 1171, 1172 [4th Dept 2006], *lv denied* 8 NY3d 923 [2007]), and other Fourth Department cases cited therein). Here, the officer's request to check or to take a look inside the car, to which defendant agreed, is not logically distinguishable from the request made in *Mitchell*, and should be treated as the equivalent of a request to search the interior of the car. The nature of the answer the driver gave in *Mitchell* to the officer's request to conduct a search does not alter the fact that we have treated the request to "look through" the car as a viable request to search; an affirmative answer to that request constitutes a consent to search.

By the time the request to search was made, the police had *already* visually examined the interior of the car. They had already asked defendant and his passenger about the large wad of rolled-up cash in the center console and the liquor bottle and cups. They had already asked whether the car held any contraband. Under these circumstances, defendant could *only* understand the request to then "take a look" as a request to search for contraband inside closed containers in the car and places the police had not already been able to see (*see People v Mota*, 2003 NY Slip Op 50017[U], *11 [Sup Ct, Bronx County 2003]). In seeking consent to search, the officers, who of course had no reason to know that the glove compartment was locked, necessarily intended to look inside that glove compartment as well as inside any other containers within the car. Indeed, it seems to me that a search of the interior of the car would have been incomplete without a search of the glove compartment. As one of the officers testified, "[W]henever I search a vehicle I search around . . . under the seats, inside the console, the glove compartment."

In view of these circumstances and defendant's response to the request to search, I consider it objectively reasonable for the police to conclude that defendant's consent to a search of his car included a search of the locations within the car where contraband might be hidden.

The only remaining question is whether the fact that the

glove compartment was locked would, as a matter of law, alter the normal expectation that a consent to search the interior of a car would include the glove compartment. Does merely encountering a lock negate the consent, requiring the police to seek additional permission before proceeding further with their search?

*People v Gomez* (5 NY3d 416 [2005]) is inapposite. The *Gomez* Court merely held, unremarkably, that the defendant's general consent to search his car did not authorize the police to impair the structural integrity of the car by breaking through the floorboard and into a hidden compartment in the gas tank. Along the same lines, when the United States Supreme Court mentioned the prospect of the police encountering a locked briefcase in the trunk of a car during a search, in *Florida v Jimeno* (500 US 248, 251-252 [1991], *supra*), it merely expressed the view that "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the *breaking open* of a locked briefcase within the trunk" (emphasis added). But we are not presented here with the exceptional circumstance in which opening a container within a car requires doing physical damage to the defendant's personal property.

In my view, there is nothing unreasonable about a police officer who already had consent to search a car, upon finding the glove compartment locked, reaching over to the key in the ignition, removing it and using it to unlock the glove compartment. Rather, that action is exactly what is reasonably to be expected.

I would therefore reverse the order on appeal and deny defendant's suppression motion, and remit the case for further proceedings on the accusatory instrument.