# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

600

KA 13-00465

PRESENT: WHALEN, P.J., CARNI, NEMOYER, TROUTMAN, AND SCUDDER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                            MEMORANDUM AND ORDER

DARRION B. FREEMAN, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JAMES A. HOBBS OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (John L. DeMarco, J.), rendered January 16, 2013. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree (two counts) and criminal possession of marihuana in the third degree.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: On appeal from a judgment convicting him upon his plea of guilty of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) and one count of criminal possession of marihuana in the third degree (§ 221.20), defendant contends that County Court erred in denying that part of his omnibus motion seeking to suppress tangible property and statements obtained by the police following their warrantless entry into his home. We reject that contention and affirm the judgment.

"Where, as here, the People contend that a suspect gave his or her consent to the police to enter the suspect's home, 'the burden of proof rests heavily upon the People to establish the voluntariness of that waiver of a constitutional right' " (*People v Forbes*, 71 AD3d 1519, 1520, *lv denied* 15 NY3d 773, quoting *People v Whitehurst*, 25 NY2d 389, 391). Based on the totality of the circumstances surrounding defendant's consent to enter his home, we conclude that the consent was voluntary (*see People v McCray*, 96 AD3d 1480, 1481, *lv denied* 19 NY3d 1104). Testimony at the suppression hearing established that, although defendant was in custody at the time he gave consent, he cooperated with the police and assisted them in gaining entry by indicating which of his keys opened the front door (*see People v Nance*, 132 AD3d 1389, 1389, *lv denied* 26 NY3d 1091; *McCray*, 96 AD3d at 1481). Once inside the home, the police observed

marihuana in plain view and immediately read defendant his *Miranda* rights.  After defendant waived those rights, he voluntarily consented, both verbally and in writing, to a search of the premises.

We reject defendant's further contention that any voluntary consent he may have given did not encompass a search of a duffel bag inside of his closet.  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*People v Gomez*, 5 NY3d 416, 419 [internal quotation marks omitted]; *see Florida v Jimeno*, 500 US 248, 251).  Where an officer informs a suspect of the specific items the officer is searching for, " '[t]he scope of a search is generally defined by its expressed object' " (*Gomez*, 5 NY3d at 420, quoting *Jimeno*, 500 US at 251).  Here, defendant responded affirmatively when the officer asked him whether he "could have permission to search both the room and the house for drugs or any other weapons or illegal contraband in the house." Additionally, defendant signed a written consent that included the "premises" and his "personal property."  We therefore conclude that defendant's consent encompassed the duffel bag.  "It was objectively reasonable for the police to conclude that the consent to search the apartment . . . encompassed a thorough search of any location where a gun [or narcotics] might have been secreted" (*People v Bruno*, 294 AD2d 179, 179-180, *lv denied* 99 NY2d 533).

All concur except WHALEN, P.J., and TROUTMAN, J., who dissent and vote to reverse in accordance with the following memorandum:  We respectfully dissent.  In our view, the People failed to meet their burden at the suppression hearing of establishing that defendant voluntarily consented to the police officers' entry into and search of his residence.  We would therefore reverse the judgment, vacate the plea, grant that part of defendant's omnibus motion seeking suppression of tangible property and statements obtained following the entry into defendant's residence, dismiss the first and second counts of the indictment, and remit the matter to County Court for further proceedings on the third count of the indictment.

The record of the suppression hearing establishes that two Rochester police officers were on routine patrol in a marked patrol vehicle when they noticed a vehicle operated by defendant.  They followed his vehicle a short distance.  When defendant turned into the driveway of his residence, one of the officers observed that the windows were excessively tinted in violation of Vehicle and Traffic Law § 375 (12-a) (b) (3).  As defendant exited his vehicle, the officers approached him on foot.  One of the officers detected the odor of marihuana and observed that defendant appeared to be nervous. Defendant disclosed to the officer that he was on probation.  When he was unable to produce a license or other identification in response to the officer's request, defendant was frisked and, during the frisk, defendant's keys fell to the ground.  The officer seized them and placed them on the trunk of the vehicle defendant had been driving. He then handcuffed defendant, escorted him to the patrol car and locked him in the backseat.  Inside the patrol car, defendant provided

his name and date of birth and a record check disclosed that defendant's driver's license had been suspended. At that point defendant was under arrest for aggravated unlicensed operation of a motor vehicle.

While defendant remained in the backseat of the patrol car, the officer asked him whether there was anything illegal in the vehicle, and defendant responded that the vehicle did not belong to him, and to his knowledge there was nothing illegal in the vehicle. The officer requested to search the vehicle, and defendant said that he "d[id]n't have a problem with that." The officer unlocked the vehicle and found a small quantity of marihuana in the pocket of defendant's sweatshirt and a larger quantity of marihuana under the driver's seat.

The officer returned to the patrol car and advised defendant that marihuana possession was not "that serious of a charge," but that defendant must produce identification "if there was any chance for him to bail out on the charge." The officer asked if defendant would accompany him inside the residence to retrieve defendant's identification, and defendant agreed to do so. As they approached the rooming house where defendant resided, defendant specified which keys opened the main door to the building and the door to his room. Once inside defendant's room, the officer saw a digital scale and a small quantity of marihuana in an open cigar box. Defendant advised the officer that his identification was in his dresser and he began to walk toward the dresser, but the officer stopped him and directed him to sit on the bed. Defendant complied, and the officer advised him that he was under arrest on drug charges. The officer pointed out that there were drugs and paraphernalia in plain sight, but "it really wasn't a big deal and [the officer] would like [defendant's] cooperation." The officer then advised defendant of his *Miranda* rights, and defendant agreed to speak to him. When asked whether he had any marihuana in the house, defendant responded that it was all in the basement. The officer asked defendant whether he could have "permission to search both the room and the basement for marijuana," and defendant replied affirmatively.

Before conducting the proposed search, the officer prepared a written consent to search form. The form misspelled defendant's name, and misidentified the place to be searched and the person giving consent. The officer acknowledged in his testimony at the suppression hearing that he did not read the form to defendant and did not know whether defendant read the form himself. Nevertheless, while defendant's hands remained handcuffed behind his back, defendant signed the form card. The officer searched the room and found a handgun and a large quantity of marihuana in a duffel bag inside a closet next to the bed.

At the outset, we agree with the majority that the People bear a heavy burden of proving that defendant consented to the entry into his home (*see People v Gonzalez*, 39 NY2d 122, 128; *People v Forbes*, 71 AD3d 1519, 1520, *lv denied* 15 NY3d 773), and whether such consent was voluntary must be determined from the totality of the circumstances (*see Schneckloth v Bustamonte*, 412 US 218, 227; *Gonzalez*, 39 NY2d at

128; *People v Harper*, 100 AD3d 772, 774, *lv denied* 21 NY3d 943). We add that we are "required to indulge every reasonable presumption against the waiver of constitutional rights guaranteed by the Fourth Amendment" (*People v McNeeley*, 77 AD2d 205, 209; *see Johnson v Zerbst*, 304 US 458, 464). With those principles in mind, we cannot agree with the majority that defendant's consent to enter and search his home was voluntarily given. "Submission to authority is not consent" (*Gonzalez*, 39 NY2d at 129) and, here, the circumstances support a finding that defendant's "apparent consent was but a capitulation to authority" (*id.*).

The factors guiding our assessment of the voluntariness of defendant's consent include whether defendant was: (1) in custody or under arrest; (2) handcuffed; (3) evasive or cooperative; (4) advised of his right to refuse consent; and (5) experienced in dealing with the police (*see id.* at 128-130; *Matter of Daijah D.*, 86 AD3d 521, 521-522). None of those factors weighs in favor of a finding of voluntariness in this case. Rather, the evidence establishes that, from the outset, the encounter between defendant and the officer "included highly intrusive police conduct[,] the coercive effect of which could not have abated when . . . defendant consented to the" entry and search of his room (*People v Packer*, 49 AD3d 184, 187, *affd* 10 NY3d 915). Within two minutes of the officers' approach of defendant based upon a minor Vehicle and Traffic Law violation, he was frisked, handcuffed, arrested, and placed in the backseat of a locked patrol vehicle. While defendant was thus confined, the officer asked defendant whether he would agree to accompany him into defendant's residence, suggesting that he intended to enter regardless of whether defendant granted or withheld his consent. Under the circumstances, defendant had no reason to suppose that his consent was required or even sought by the officer and, indeed, defendant was never advised that he had a right to refuse consent (*see People v Flores*, 181 AD2d 570, 572; *People v Guzman*, 153 AD2d 320, 324; *cf. People v Green*, 104 AD3d 126, 132). Rather, defendant was persuaded to accompany the officer into his residence by the officer's misleading assurances that his identification was the practical equivalent of the keys to the jail (*see generally People v Skardinski*, 24 AD3d 1207, 1208; *People v Cioffi*, 55 AD2d 682, 682). No evidence was presented at the suppression hearing that defendant was "a case-hardened sophisticate in crime, calloused in dealing with the police," and thus resistant to coercive police tactics (*Gonzalez*, 39 NY2d at 129). Indeed, the only evidence of other bad acts or criminality at the hearing was that defendant was on probation as the result of a Vehicle and Traffic Law offense. We conclude that the totality of those circumstances weighs heavily against a determination that defendant's consent to the officer's entry into the residence was voluntary (*see id.* at 128-129; *Harper*, 100 AD3d at 774).

Contrary to the conclusion of the suppression court and the majority, moreover, we cannot conclude that defendant's conduct in pointing out the keys that opened the doors to the rooming house and his room evinced a desire to be cooperative (*cf. People v McCray*, 96 AD3d 1480, 1481, *lv denied* 19 NY3d 1104; *People v Abrams*, 95 AD2d 155, 157). The officer had seized defendant's keys at the beginning of the

encounter, and defendant merely facilitated what he must have perceived to be the officers' inevitable entry into his residence. Nor did the remainder of defendant's actions indicate cooperation with the police. To the contrary, defendant was evasive during the encounter, denying that there were drugs in the vehicle he was driving, and falsely advising the officer that any drugs in the rooming house would be found in the basement (*cf. People v Yoneyama*, 128 AD3d 616, 616, *lv denied* 26 NY3d 937). In sum, therefore, we conclude that the People failed to meet their burden of establishing that defendant's consent to the officer's entry was "a true act of the will, an unequivocal product of an essentially free and unconstrained choice" (*Gonzalez*, 39 NY2d at 128). Inasmuch as the entry into defendant's residence was illegal, the People cannot rely on the plain view doctrine to support the seizure of the marihuana and paraphernalia that the officer saw upon entering the residence (*see People v Marcial*, 109 AD3d 937, 938, *lv denied* 22 NY3d 1200).

We further conclude that, apart from the illegal entry, the People failed to establish that defendant voluntarily consented to the search of his room. Defendant signed a written consent form that was nonsensical as completed, and the officer who prepared it testified that he "presented" it to defendant but neither read it aloud nor sought any assurance from defendant that he had read it (*see Skardinski*, 24 AD3d at 1208). Further, defendant signed the form *while his hands were handcuffed behind his back*, as they had been almost from the inception of the encounter. In our view, "the coercive logic of the situation would have been obvious to any reasonable, innocent person in defendant's place" (*Packer*, 49 AD3d at 188-189). "Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" (*Gonzalez*, 39 NY2d at 128). Here, the totality of the circumstances compel the conclusion that defendant's consent to the search of his residence, like his consent to the entry, was the product of coercion rather than his free and unconstrained choice.

We would therefore grant defendant's omnibus motion to the extent that it sought suppression of physical evidence and statements obtained following the entry, which includes the weapon seized from the duffel bag. Suppression of the weapon would eliminate the evidence supporting the first and second counts of the indictment, and those counts should therefore be dismissed. Inasmuch as it is unclear from the record whether the evidence supporting the third count of the indictment charging criminal possession of marihuana was obtained from the vehicle or the residence, we would remit the matter to County Court for further proceedings on that count.

Entered:  July 8, 2016                          Frances E. Cafarell
                                                Clerk of the Court